

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| TYRONE ARNOLD, | ) | No. ED102943 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. John Garvey |
| | ) | |
| Respondent. | ) | FILED: April 26, 2016 |

## Introduction

Appellant Tyrone Arnold ("Arnold") appeals from the judgment of the motion court denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. Arnold pleaded guilty, pursuant to a plea agreement, to voluntary manslaughter and received a sentence of 20 years' imprisonment. On appeal, Arnold contends the motion court clearly erred in denying his Rule 24.035 motion because Arnold alleged facts showing that he was denied effective assistance of counsel, in that his attorneys (collectively referred to as "plea counsel") were ineffective for refusing to make offers of 10 and 15 years' imprisonment in exchange for Arnold's guilty plea to voluntary manslaughter. Arnold further claims the motion court abused its discretion in denying his request to disqualify the City of St. Louis Circuit Attorney's Office ("the Circuit Attorney") from representing the State in this matter. Because the record of Arnold's guilty plea and sentencing directly refutes that his guilty plea was involuntary and

unknowing, and because his motion to disqualify the Circuit Attorney is moot, we affirm the judgment of the motion court.

## Factual and Procedural History

The State charged Arnold with first-degree murder and subsequently filed a notice of its intent to seek the death penalty. On July 3, 2014, Arnold pleaded guilty to voluntary manslaughter as part of a plea agreement negotiated between plea counsel and the State. As part of the plea agreement, the State filed an information reducing the first-degree murder charge to a charge of voluntary manslaughter and charged Arnold as a dangerous offender based on a prior conviction for second-degree murder.

At the outset of the guilty plea hearing, plea counsel announced that, "[i]n light of the negotiations with the State of Missouri and the amended charge that has been filed," Arnold had decided to withdraw his not guilty plea and enter a plea of guilty "pursuant to the plea agreement with the State." Arnold confirmed that he wished to plead guilty to the charge of manslaughter. The trial court asked Arnold if he understood that he was now being charged with voluntary manslaughter, a Class B felony, as a dangerous offender. Arnold confirmed he understood. Arnold also stated that plea counsel had explained the charges to him so that he understood them, which plea counsel confirmed.

The prosecutor then outlined the evidence it would present should the case proceed to trial. Arnold confirmed that these facts were accurate and were "what [he] did." Arnold also confirmed his previous guilty plea to second-degree murder. The trial court found Arnold to be a dangerous offender based on his prior conviction.

The prosecutor proceeded to explain the range of punishment for voluntary manslaughter as a dangerous offender. The prosecutor explained that Arnold was subject to an enhanced range

2

of punishment as a dangerous offender: "imprisonment in the Missouri Department of

Corrections for a term of years not less than ten years, or up to thirty years or life imprisonment."

The following exchange then occurred between the trial court, the prosecutor, and Arnold:

| | |
|---|---|
| Trial Court: | Now, Mr. Arnold, you are making this plea pursuant to a stipulated plea agreement; is that correct? |
| Arnold: | Yes, sir. |
| Trial Court: | Now, [prosecutor], the basis of that stipulated plea agreement is—what is the agreed upon sentence that the parties have agreed to in this case? |
| Prosecutor: | The State and the defendant have agreed that the appropriate disposition would be for the defendant to serve a term of twenty years imprisonment in Missouri Department of Corrections, and for that sentence to run consecutive to the balance of time that he is to serve in 22881-00851. |
| Trial Court: | Now, Mr. Arnold, do you understand that that is what the stipulated sentence is in this case? |
| Arnold: | Yes, sir. |
| Trial Court: | And you have agreed to that; is that correct? |
| Arnold: | Yes, sir. |

The trial court produced the stipulation and plea agreement signed by Arnold and dated

that same day, July 3, 2014. Arnold confirmed that he had signed the document and that he

understood it. Arnold further stated that he voluntarily signed the document. The trial court

again questioned Arnold about his understanding of the plea agreement and the sentence he

would receive:

| | |
|---|---|
| Trial Court: | So you now know that it will be the sentence of this Court to give you twenty years in the Missouri Department of Corrections, and that time will be consecutive to your prior murder in the second degree conviction. Is that correct? |
| Arnold: | Yes, sir. |
| Trial Court: | That's what you understand the sentence to be? |
| Arnold: | Yes. |

The trial court next questioned Arnold about his interactions with plea counsel:

| | |
|---|---|
| Trial Court: | [S]ince they have been assigned to your case, have you had an opportunity to talk with them about your case? |
| Arnold: | Yes, sir. |

3

| | |
|---|---|
| Trial Court: | And you have gone over the facts of this case with them, haven't you? |
| Arnold: | That's correct. |
| Trial Court: | In fact, several times you have met here in this courtroom with your attorneys; is that correct? |
| Arnold: | Yes, sir. |
| Trial Court: | And that's in addition to the times that you've met with them over in the Justice Center? |
| Arnold: | Jail. Yes sir. |

The trial court went on to explain, and Arnold indicated that he understood the various rights he was giving up by pleading guilty rather than proceeding to trial, including: the right to a jury trial, the right to be found guilty beyond a reasonable doubt, the State's burden of proof, the necessity of a unanimous verdict in order to obtain a conviction, the right to not testify on his own behalf, and the right to cross-examine the State's witnesses.

Arnold stated that he did not have any questions to ask either the trial court or plea counsel before entering his guilty plea. The trial court asked Arnold whether anyone had threatened, intimidated, or tricked him into pleading guilty. Arnold responded, "No, sir." Arnold proceeded to plead guilty to voluntary manslaughter. The trial court accepted the guilty plea, finding that Arnold "knowingly and voluntarily entered into this plea of guilt with a full understanding of the charges and the consequences," and finding that a factual basis existed for the guilty plea.

The trial court proceeded immediately to sentencing. Both plea counsel and the prosecutor requested that the trial court follow the plea agreement. The trial court did so, sentencing Arnold to 20 years' imprisonment. The trial court explained Arnold's post-conviction rights under Rule 24.035, which Arnold indicated he understood.

Finally, the trial court asked Arnold a series of questions regarding plea counsel's performance, as well as another question about the voluntariness of his guilty plea:

4

| Trial Court: | Now, I have to ask you again, then, you have met with both of your attorneys numerous times; is that correct? |
| Arnold: | That's correct. |
| Trial Court: | And when you met with them, did you discuss your case? |
| Arnold: | Yes, sir. |
| Trial Court: | And did they answer those questions? |
| Arnold: | Yes, sir. |
| Trial Court: | Did you eventually tell them that you wanted to plead guilty? |
| Arnold: | Yes, sir. |
| Trial Court: | And that was your decision? |
| Arnold: | Yes, it was. |
| Trial Court: | No one fooled you or tricked you or forced you into that decision? |
| Arnold: | No, sir. |
| Trial Court: | During the plea of guilty that we just went through, did they say or do anything that you disagreed with? |
| Arnold: | No. |
| Trial Court: | Are you happy with their services? |
| Arnold: | Yes, I am. |
| Trial Court: | Should I know of any reason at all why they have not done an adequate job for you? |
| Arnold: | No, they did a good job for me. |

The trial court found no probable cause to believe that Arnold received ineffective assistance of counsel. Arnold subsequently filed a timely pro se Rule 24.035 motion for post-conviction relief. Post-conviction counsel was appointed and timely filed an amended motion alleging plea counsel were ineffective for "refusing to make [Arnold's] offer of ten and fifteen years in exchange for his voluntary manslaughter plea as a dangerous offender." Specifically, Arnold alleged that he "wanted plea counsel to offer a ten-year sentence to see if the State would be willing to accept it," and if rejected, he "wanted plea counsel to offer a fifteen-year sentence." Instead, Arnold alleged that plea counsel offered a twenty-year sentence. Arnold argued that if plea counsel had offered 10- and 15-year sentences, "there was a reasonable probability the offer would have been accepted and the result of the proceedings would have been different."

In addition to his amended motion, Arnold filed a motion to disqualify the Circuit Attorney's office and appoint a special prosecutor to represent the State in adjudicating his post-

conviction claim. Arnold alleged that Assistant Circuit Attorney Beth Orwick ("Orwick") and any supervisors who were involved in the plea negotiations were "essential witnesses" who must be disqualified.

On April 1, 2015, the motion court entered its Findings of Fact, Conclusions of Law and Order ("Order") denying Arnold's amended motion without an evidentiary hearing. The motion court also denied Arnold's motion to disqualify the Circuit Attorney, finding the basis for the motion moot. The motion court concluded that Arnold had failed to allege facts not refuted by the record which would entitle him to relief. The motion court noted that Arnold repeatedly expressed satisfaction with plea counsel's performance at the guilty plea hearing. The motion court also found that Arnold's "suggestion that the State would have agreed to the minimum punishment for the lesser degree homicide and that the Court would have accepted such an agreement amounts to rank speculation at best." Finally, the motion court rejected Arnold's contention that Missouri v. Frye[1] was applicable, concluding that Arnold's case "is not at all comparable to the situation in Frye ... This is not a case where counsel failed to convey an offer." This appeal follows.

## Points on Appeal

Arnold raises two points on appeal. First, Arnold contends the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing because he alleged facts showing he was denied effective assistance of counsel. Specifically, Arnold claims plea counsel were ineffective for refusing to make offers of 10 and 15 years' imprisonment in exchange for his guilty plea, in that the State was openly negotiating with plea counsel and the term of years was negotiable. Arnold maintains that had plea counsel offered a

---

[1] Missouri v. Frye, 132 S. Ct. 1399 (2012).

sentence of 10 or 15 years, the State would have considered accepting the offers. Second, Arnold avers the motion court abused its discretion in denying his request to disqualify the Circuit Attorney from representing the State in this matter. Arnold claims that had the motion court disqualified the Circuit Attorney, the outcome of the proceedings would have been different.

## Standard of Review

Appellate review of the denial of a Rule 24.035 post-conviction motion is limited to a determination of whether the motion court's findings, conclusions, and judgment are clearly erroneous. Wooldridge v. State, 239 S.W.3d 151, 153–54 (Mo. App. E.D. 2007). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court, after reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Worthington v. State, 166 S.W.3d 566, 572 (Mo. banc 2005). After a guilty plea, our review is limited to a determination of whether the movant's plea was knowing and voluntary. Loudermilk v. State, 973 S.W.2d 551, 553 (Mo. App. E.D. 1998).

To obtain an evidentiary hearing under Rule 24.035 on a claim of ineffective assistance of counsel, the movant must raise facts, not conclusions, warranting relief; the facts alleged must raise matters not refuted by the record; and the matters must have resulted in prejudice to the movant. May v. State, 309 S.W.3d 303, 306 (Mo. App. E.D. 2010). Where a movant alleges ineffective assistance of counsel following a guilty plea, if an examination of the guilty plea proceedings directly refutes that the movant's plea was involuntary, the movant is not entitled to an evidentiary hearing. Watt v. State. 835 S.W.2d 404, 406 (Mo. App. E.D. 1992).

7

## Discussion

Because the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of criminal proceedings, the right to effective assistance of counsel applies to certain steps before trial, including plea negotiations. Frye, 132 S. Ct. at 1405. Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id.

In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland, 466 U.S. 668). There is a strong presumption that counsel's performance was reasonable and effective. Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). To overcome this presumption, Arnold must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Id.

When a claim of ineffective assistance of counsel follows a guilty plea, the claim of ineffective assistance is "immaterial except to the extent it impinges on the voluntariness and knowledge with which a [movant] pled guilty." Cain v. State, 859 S.W.2d 715, 717 (Mo. App. E.D. 1993). As a result, in order to prevail on an ineffective assistance of counsel claim following a guilty plea, a movant "must establish a serious dereliction of duty that materially affected his substantial rights and further show that his guilty plea was not an intelligent or knowing act." Evans v. State, 921 S.W.2d 162, 164 (Mo. App. W.D. 1996).

## I.    Point One—Ineffective Assistance

### A.  Arnold's claim is refuted by the record.

8

Arnold contends he alleged facts not refuted by the record entitling him to relief on his ineffective assistance of counsel claim. We disagree.

Where a movant alleges ineffective assistance of counsel following a guilty plea, if an examination of the guilty plea proceedings directly refutes that the movant's plea was involuntary, the movant is not entitled to an evidentiary hearing. Watt, 835 S.W.2d at 406. To preclude an evidentiary hearing, the motion court's inquiries at the plea and sentencing hearings "must be sufficiently specific to elicit responses conclusively refuting [the] movant's allegations." Thomas v. State, 249 S.W.3d 234, 238 (Mo. App. E.D. 2008).

Here, the motion court's questions and Arnold's responses thereto specifically, directly, and conclusively refute any claim that Arnold's guilty plea was involuntary or unknowing. The motion court repeatedly and specifically asked Arnold questions about whether he understood the nature and consequences of his guilty plea, including the agreed-upon sentence and the various rights he was giving up by pleading guilty rather than proceeding to trial. The motion court also asked Arnold multiple times whether he was pleading guilty voluntarily, rather than being tricked, forced, or coerced into doing so. Each time, Arnold assured the trial court he was pleading guilty of his own volition and choice. Further, the motion court repeatedly and in great detail questioned Arnold about his understanding and acceptance of the specific terms of the plea agreement. Arnold repeatedly indicated his understanding and acceptance. Specifically, Arnold confirmed that he understood the stipulated sentence was 20 years' imprisonment, that he had plenty of time to meet with plea counsel and discuss the case, that plea counsel explained the plea agreement to him, and that he agreed to the plea agreement voluntarily. Finally, Arnold repeatedly confirmed he understood he was giving up the right to proceed to trial by virtue of pleading guilty.

9

The motion court asked specific questions and elicited specific responses indicating that Arnold understood the terms of the plea agreement, including the agreed-upon sentence, as well as the consequences of pleading guilty. Thus, the record of Arnold's guilty plea and sentencing hearing clearly reflects that he pleaded guilty voluntarily and with a full understanding of the terms and consequences of the negotiated plea agreement.

B. *Frye* is not applicable.

We further note that even if Arnold's allegations were not refuted by the record, neither Frye nor any other authority specifies that counsel is constitutionally obligated to make plea offers to the State that are suggested by the defendant. Neither party has presented, nor has our own careful research revealed, any authority to that effect.

The Supreme Court has addressed two specific and narrow instances of attorney error in the context of plea bargaining: (1) *failing to communicate* an existing offer to the defendant; and (2) *providing bad advice* about an existing offer. See Frye, 132 S. Ct. 1399, and Lafler v. Cooper, 132 S. Ct. 1376 (2012), respectively. Arnold suggests that the Supreme Court's holding in Frye extends to the facts of this case. We are not persuaded. The facts found in Frye are simply not present in the case at hand. Here, the *only* allegation of ineffective assistance is that plea counsel did not extend Arnold's desired offer to the State. Importantly, unlike in Frye, there is no allegation that plea counsel did not inform Arnold about an existing plea agreement offer.

The Supreme Court in Frye was careful to note the limited scope of its holding and specify that it did *not* seek to define the duties of counsel during the bargaining process of plea negotiations:

> The inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargain process. This is a difficult question ... **This case presents neither the necessity nor the occasion to define the duties of defense counsel in those respects, however.** Here the question is whether defense

10

> counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both.

Frye, 132 S. Ct. at 1408 (emphasis added). Ruling only on that narrow issue, the Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id. The holding of Frye does not in any way extend to the facts of Arnold's case.

Additionally, there is nothing in the record to suggest that plea counsel's negotiation of a 20-year sentence for Arnold's guilty plea to the lesser offense of voluntary manslaughter demonstrated anything but reasonable, effective, and competent assistance. The State charged Arnold with first-degree murder and sought the death penalty for a crime the motion court described as "horrific." Arnold had a prior conviction for second-degree murder and had no defense witnesses. In spite of these circumstances, plea counsel negotiated an agreement in which Arnold pleaded guilty to voluntary manslaughter in exchange for a 20-year sentence, a result the motion court correctly concluded was "far more advantageous to [Arnold] than he was likely to receive if he went to trial." Thus, plea counsel's performance was far from deficient. The record instead underscores just how effective plea counsel's performance was given the facts and circumstances of Arnold's case.

Because the record of Arnold's guilty plea and sentencing hearing directly refutes that his guilty plea was involuntary and unknowing, the motion court did not clearly err in denying his Rule 24.035 motion without an evidentiary hearing. Point One is denied.

## II. Point Two—Motion to Disqualify the Circuit Attorney

The motion court concluded that because Arnold was not entitled to an evidentiary hearing, the issue of whether the Circuit Attorney could represent the State at that hearing was

11

moot. We agree with the motion court's reasoning and conclusion. Our holding as to Point One renders Point Two moot. Point Two is denied.

Conclusion

The judgment of the motion court denying Arnold's Rule 24.035 motion for post-conviction relief without an evidentiary hearing is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa P. Page, J., concurs.

12