

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| SAMUEL LOMAX, | ) | No. ED103979 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Thomas J. Frawley |
| STATE OF MISSOURI, | ) | |
| | ) | FILED: |
| Respondent. | ) | December 20, 2016 |

Samuel Lomax (Movant) appeals from the judgment denying his Rule 29.15 motion without an evidentiary hearing. We affirm.

Movant was charged with robbery in the first degree, armed criminal action, two counts of robbery in the second degree, attempted robbery in the second degree, tampering in the first degree, assault in the third degree, resisting arrest and possession of drug paraphernalia.

According to the facts as summarized in Appellant's direct appeal, State v. Lomax, ED97365, on the day in question, a white Chevrolet half-ton pickup truck owned by a church organization was stolen while parked in the parking lot to the organization's main building. Several hours later, another individual saw a struggle between a man and another person at a bus stop. This witness saw a man run from the stop carrying a woman's purse. The man was seen driving away in a truck matching the description of the truck stolen from

the church organization.  An elderly woman, with bruises on her face and scrapes on her arms and legs, indicated the man seen running from the bus stop had stolen her purse.  After the police were called and arrived at the bus stop, a description of the assailant and the truck were immediately broadcast.  The elderly woman told police the man punched her in the face, and her face was swollen.

As the officer was reporting the incident, the officer heard a radio broadcast regarding another robbery involving a man matching the elderly woman's description of her assailant as well as the description of the truck he drove away.  During the second robbery, seven blocks from the scene of the first robbery, the victim was trying to fuel a U-Haul truck at a gas station when the victim saw Movant walking toward the truck carrying a tire iron.  Movant reached into the truck where the victim was sitting and grabbed the wallet hanging from a cord or chain around the victim's neck and ripped it off.  Movant then opened the door of the truck and tried to forcibly pull the victim out.  The victim fought back, and Movant reached inside the truck and snatched the victim's purse.  Movant was scared off by the victim's friend running out of the gas station.  The victim saw the Movant get into a truck matching the description of the truck stolen from the church organization earlier that day.  The victim later identified Movant in a photo lineup and also identified his jacket and the tire iron.

A short time later, yet another victim was securing her two-year old son in a car seat in the back of a parked car when she noticed a white Chevrolet pickup truck stop in the middle of the street after it passed her car.  This victim saw Movant carrying a crowbar walk in front of her car.  When this victim faced Movant and asked him what he wanted, Movant raised the crowbar and told her to "shut the f*** up or I'm going to f****** kill

2

you." Movant opened the passenger door of the victim's car, took her purse and told her that if the purse did not have any money in it, he would kill her. As Movant began to rummage through the purse, he was startled and walked toward the truck. This victim screamed, and Movant drove away in the truck. This victim was able to describe Movant, his clothing, and the white pickup truck and later identified Movant in a live lineup. She also recognized some of her property that was subsequently found inside the white truck.

Still later that night, another victim parked her car on the side of the street. After exiting the car, she heard a loud noise and saw Movant jump out of a white pickup truck. As Movant lunged toward her, she turned and faced him, but he grabbed at her necklace and knocked her to the ground. Movant also grabbed her left arm, leaving a bruise. When this victim screamed, Movant ran back to the truck, hopped in and took off. The victim reported the incident to police, providing a description of Movant, his clothing and the white truck. A witness to this incident also provided the license plate number of the truck. This victim subsequently identified Movant in a live lineup. Following this incident, police placed a "wanted" notice on the white pickup truck.

After an officer left the police station at the end of his shift and was driving home, the officer observed a truck matching the description of the truck on the "wanted" notice. After confirming the license plate number, he notified an officer on duty who found the truck, followed it and activated his police cruiser's lights and sirens. The truck pulled to the curb but sped away as the officer walked toward it. The officer pursued the truck, which reached speeds of up to 70 miles per hour. The truck ran a red light and collided with another vehicle, with both vehicles sustaining significant damage. When officers approached the truck, they found Movant sitting in the driver's seat with his foot on the

3

gas pedal, revving the engine. Movant refused to exit the truck when ordered by the officers. When Movant was forcibly removed from the truck and told he was under arrest and informed of his Miranda rights, using profanity, he told the officers, "I know all that s***. You can't chase stolen cars, you're in more trouble than I am." When officers conducted a search of Movant incident to the arrest, they found a glass smoking tube typically used for smoking crack, and subsequent testing revealed that the pipe contained traces of cocaine base. A search of the truck revealed that the steering column had been cracked and that a screwdriver had been used instead of a key in the ignition. A tire iron and clothing matching the description of the clothing worn by the suspect involved in the robberies or attempted robberies were found inside the truck.

Prior to jury trial, defense counsel informed the trial court that Movant had decided to plead guilty to all nine counts in exchange for a total sentence of twenty-five years, and the trial court began questioning Movant to ensure that his decision to plead guilty was knowing, intelligent and voluntary. The following exchange took place during the plea hearing:

| Court: | [Movant], I'm going to ask you some questions. You're under oath, I expect you to answer the questions truthfully; is that fair? |
|---|---|
| Movant: | Yes, sir. |
| Court: | If at any time you need to speak to [defense counsel] stop and let me know and I'm happy to do that; is that fair? |
| Movant: | Yes. |
| Court: | If you need me to restate the question let me know, I'll stop and do that for you; is that fair? |
| Movant: | Yes, sir. |

4

. . .

| | |
|---|---|
| Court: | Do you understand you've been charged with . . . [o]ne count of robbery first degree, one count of armed criminal action, two counts of robbery second degree, one count of attempted robbery second degree, one count of tampering first degree, one count of assault third degree, one count of resisting arrest, and one count of unlawful use of drug paraphernalia. Do you understand those are the charges against you today? |
| Movant: | Yes, sir. |
| Court: | Has your lawyer explained each of these charges to you so that you understand them? |
| Movant: | Yes, sir. |
| Court: | Have you spoken with your lawyer enough to make a decision whether or not to plead guilty to any or all of these charges? |
| Movant: | Say it again. |
| Court: | Sure. Have you spoken with your lawyer enough to decide whether you want to plead guilty to any or all of these charges? |
| Movant: | Yeah, we had just spoken about this situation now. |
| Court: | Have you spoken with your lawyer enough to make a decision whether or not to plead guilty to any or all of these charges? |
| Movant: | Yeah, yes, sir. |

. . .

| | |
|---|---|
| Court: | All right. At this time, [Movant], I'm going to ask the circuit attorney to tell us what she expects the evidence against you would be if there were a trial. Please listen to her because when she's finished I'm going to ask if you did what she says you did; fair enough? |

5

Movant:            Yes, sir.

[Circuit attorney explains what she expects the evidence against Movant would be if there were a trial as to Counts I and II.]

Court:             [Movant], did you do what the circuit attorney says you did on the date she says you did it?

Movant:            Did I what?

Court:             Did you do what the circuit attorney says you did on the date she says you did it?

Movant:            I don't really have no comment on that.

Court:             Okay.  Fair enough.  Let's go, let's bring the jury in.  No, we're done.  I don't understand what she was saying, that's it.  Let's bring them in.

Movant:            No, I misunderstood.

Court:             No, sir, we're done.  Let's go.

Defense counsel:   Your Honor, I really don't think he understands.

Court:             No disrespect to you, this is really simple.  Either you did what the circuit attorney says you did, I've got no comment on that.  We're not going through this whole plea and have it blow up.  Let's go, let's bring the jury in.  Have a seat, [Movant].

At trial, the jury found Movant guilty of all nine counts.  Movant was sentenced as a prior and persistent offender to consecutive life sentences on the robbery in the first degree and armed criminal action, concurrent sentences of fifteen, seven and four years on the remaining felonies and concurrent sentences of ten months in a medium security institution on the misdemeanors.  At sentencing, defense counsel stated that Movant "misunderstood the directions [she] gave him regarding his preserving his issue with [her] office, and that's when the plea blew."  She stated that Movant did not want to go to trial

6

and asked the trial court to consider sentencing him to the State's pretrial recommendation of twenty-five years. When asked about the assistance he received from his counsel, Movant stated that, during the plea hearing, he did not understand what the court was saying and that he was not trying to go to trial. He added that his counsel "was telling [him] to plead a certain way to preserve some rights." The prosecutor noted that Movant had pled guilty before and certainly understood how a guilty plea works.

Movant's convictions were affirmed on direct appeal, and after this Court issued its mandate, Movant filed a Rule 29.15 motion claiming that trial counsel was ineffective for failing to advise Movant on the plea process and failing to clarify Movant's misunderstanding about his plea. In his motion, Movant claimed that he was going to plead guilty in exchange for a twenty-five year sentence, he was "not playing" and he wanted to plead guilty. He claimed trial counsel "never stressed" to him that "he must agree with the judge with every part of the plea" and did not inform him "that if he did not understand parts of the plea, that he must inform her so she could tell the judge about the misunderstanding." Movant claimed that because of his counsel's failure to inform him how to plea, his plea was rejected by the trial court and Movant was forced to go to trial. Had his counsel advised him how to plead guilty and clarified his misunderstanding about the plea, he would have accepted the offer and pled guilty pursuant to the offer.

Movant also claimed it was unreasonable for his counsel to fail to advise him that "if he did not accept the State's pretrial plea offer of a twenty-five year sentence, he could possibly receive a longer sentence following his conviction after a jury trial." Movant claimed that a reasonably competent attorney would have advised him about how to plead guilty, would have clarified any misunderstandings with the trial court and would have

7

"stressed" to Movant "that if he did not agree with the [trial court], there was a risk that his plea would not be accepted by the [trial court]."

The motion court denied the motion without an evidentiary hearing. Movant appealed the denial of his Rule 29.15 motion, and rather than addressing the merits, this Court reversed and remanded the case for a determination of abandonment under Moore v. Sate, 458 S.W.3d 822 (Mo. banc 2015). On remand, the motion court issued an order with findings of fact and conclusions of law finding that Movant had been abandoned by post-conviction counsel and addressing the merits of the claims made in the amended motion. In doing so, Movant's claim was denied without an evidentiary hearing.

In its findings of fact and conclusions of law, the motion court noted that Movant was charged as a persistent offender with eight prior guilty pleas, admitted to pleading guilty previously, expressed an understanding of his rights when questioned, and stated that he "understood the charges and had spoken with his attorney sufficiently to make a decision whether to plead guilty" and understood that he did not have to plead guilty. The motion court noted that when asked if he had committed the offenses as described by the prosecutor, Movant responded, "I don't really have no comment on that."

The motion court added that "[a] criminal defendant has no constitutional right to have a plea of guilty accepted, and a trial court may reject a plea in its sound discretion." The motion court pointed out that Rule 24.02(e) prohibits the court from entering judgment upon a guilty plea unless there is a factual basis for the plea and that "[i]n the absence of a sufficient factual basis, the court should reject the plea." The motion court also noted that while it is "not necessary for a defendant to actually admit or state facts establishing that the offense occurred," it found that Movant's statements at the plea hearing "indicated he

8

was not willing to admit the facts constituting the offenses" and that "he was not taking the guilty plea proceeding seriously and was not accepting responsibility for his actions."

The motion court further found that Movant's claim "that his attorney should have advised him how to plead guilty" was without merit since the plea proceeding "did not involve complex issues, and the questions asked of [Movant] did not utilize legal terminology that would not be expected to be understood by a criminal defendant." The motion court added, "The issue before the Court was whether [Movant] was willing to knowingly and voluntarily plead guilty to the charges, and this issue was to be based on [Movant's] own responses and not on what counsel advised him to say in order to get a plea accepted." The motion court denied the motion, concluding that Movant failed to allege facts which entitled him to relief. This appeal follows.

Movant now claims that the motion court erred in denying his motion for post-conviction relief without a hearing because the alleged facts show that he was denied his rights to due process, fair trial and effective assistance of trial counsel because his trial counsel failed to advise him on the plea process and to clarify his misunderstanding about his plea. Movant claims he believed he was going to plead guilty in exchange for a twenty-five year sentence and that when he had a misunderstanding during his plea, his plea was rejected by the court, he was forced to go to trial and he lost his case. He claims that but for his trial counsel's failure, there is a reasonable probability that the outcome of the proceedings would have been different.

A motion court's ruling on motion for post-conviction relief will be overturned "only when either its findings of fact or its conclusions of law are clearly erroneous." Zink v. State of Missouri, 278 S.W.3d 170, 175 (Mo. banc 2009). "To overturn, the ruling must

9

leave the appellate court with a definite and firm impression that a mistake has been made." Id. (internal quotations omitted).

"The Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012) (internal quotations omitted). Those "critical" stages include the entry of a guilty plea. Id. To establish a claim for ineffective assistance of counsel, the movant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In doing so, the movant must establish that "counsel's representation fell below an objective standard of reasonableness" and must "affirmatively prove prejudice." Id. at 688, 693. There is a "strong presumption that counsel's performance was reasonable and effective," and the movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Zink, 278 S.W.3d at 176.

To be entitled to an evidentiary hearing on a claim of ineffective assistance of counsel, "a movant must: (1) allege facts, not conclusions, that, if true, would warrant relief; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant." Barnett v. State, 103 S.W.3d 765, 769 (Mo. 2003). Here, Movant has failed to allege facts that, if true, would warrant relief and raise matters not refuted by the record.

To be clear, Movant is not claiming that his counsel failed to communicate a plea offer or provided bad advice on an existing offer. See Arnold v. State, 2016 WL 1642966, *5 (Mo. App. E.D. 2016) (recognizing "two specific and narrow instances of attorney error

10

in the context of plea bargaining: (1) *failing to communicate* an existing offer to the defendant; and (2) *providing bad advice* about an existing offer" (emphasis in original)). Instead, Movant claims that counsel "never stressed" to him that "he must agree with the judge with every part of the plea" and did not inform him "that if he did not understand parts of the plea, that he must inform her so she could tell the judge about the misunderstanding." Had his counsel advised Movant to "agree with the judge with every party of the plea," such advice could have undermined the trial court's important role in ensuring that the plea is entered knowingly, intelligently and voluntarily and could have potentially induced Movant to provide inaccurate responses to the trial court's inquiries. See Cooper v. State, 356 S.W.3d 148, 153 (Mo. banc 2011) ("[A] guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.")

As the motion court indicated, "The issue before the Court was whether [Movant] was willing to knowingly and voluntarily plead guilty to the charges, and this issue was to be based on [Movant's] own responses and not on what counsel advised him to say in order to get a plea accepted." Because the trial court's questions at issue were straightforward and lacked the legal complexity or terminology that might require further explanation by Movant's counsel, it is hard to imagine the type of reasonable advice that may be required in this situation other than instructing Movant to tell the truth, which counsel could have reasonably expected Movant was doing since he was under oath or affirmation. Without factual allegations indicating that his counsel had reason to believe Movant would not be able to understand the plea process or the questions posed, Movant failed to allege facts warranting relief by indicating that his counsel's performance "fell below an objective

11

standard of reasonableness." See Strickland, 466 U.S. at 688. To the contrary, the record refutes that Movant misunderstood: he admitted to pleading guilty previously, expressed an understanding of his rights when questioned and stated the he understood the charges and had "spoken with [his] lawyer enough to make a decision whether or not to plead guilty to any or all of [the] charges" and understood that he did not have to plead guilty. Moreover, the record indicates that the Movant appropriately answered multiple questions and even sought clarification on a separate question he did not understand.

In addition, as for Movant's claim that his counsel did not inform him "that if he did not understand parts of the plea, that he must inform her so she could tell the judge about the misunderstanding," the trial court clearly directed Movant that if he needed to speak to his counsel at any time to stop and let the court know. The trial court also directed Movant to let the trial court know if Movant needed the trial court to restate a question.

Movant also claimed that it was unreasonable for his counsel to fail to advise him that "if he did not accept the State's pretrial plea offer of a twenty-five year sentence, he could possibly receive a longer sentence following his conviction after a jury trial." However, the record clearly indicates that Movant was prepared to accept the plea offer. Accordingly, it was not the alleged failure to inform Movant about possible sentences that interfered with the entry of the plea but Movant's refusal to admit to the conduct described by the prosecutor to establish a factual basis for the plea that caused the trial court to reject the plea.[1]

---

[1] According to the trial court, the reason the plea was not entered in this case was because of the trial court's determination that Movant was unwilling "to admit the facts constituting the offenses" and that "[Movant] was not taking the guilty plea proceeding seriously and was not accepting responsibility for his actions," not because of any ineffectiveness of his counsel. We cannot overlook the trial court's discretion in this context. There is no absolute right to have a court accept a plea. State v. Creamer, 161 S.W.3d 420, 424 (Mo. App. W.D. 2005). "For this reason, it is well settled that a trial court may exercise its sound discretion to reject a guilty plea." Id. Missouri courts have described such discretion as "virtually unlimited." See State v.

We find no clear error in the denial of Movant's post-conviction motion without a hearing because Movant failed to allege facts which entitled him to relief and raise matters not refuted by the record.

Point denied.

Judgment affirmed.

ROBERT G. DOWD, JR., Judge

Angela T. Quigless, P.J. and
Lisa S. Van Amburg, J., concur.

---

Williams, 353 S.W.3d 685, 690 (Mo. App. W.D. 2011) ("The trial court has virtually unlimited discretion prior to acceptance of the plea to refuse any plea of guilty outright or to reject any plea bargain between the State and the defendant.") (quoting Creamer, 161 S.W.3d at 425). "It has frequently been held that the court at a guilty plea proceeding should reject the plea if the record facts do not establish the commission of a crime." State v. Osborn, 2016 WL 5888947, *4 (Mo. App. W.D. 2016) (internal quotations omitted).