

# Missouri Court of Appeals

## Southern District

### Division Two

KIMBERLY K. COOK,                    )
                                     )
    Movant-Appellant,         )
                                     )
v.                                   )     No. SD35979
                                     )     Filed: February 7, 2020
STATE OF MISSOURI,                   )
                                     )
    Respondent-Respondent.    )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Laura J. Johnson, Special Judge

## AFFIRMED

Kimberly Keith Cook (Cook) appeals from an order denying his amended Rule 24.035 motion to set aside his four convictions for: robbery in the first degree; robbery in the second degree; and two counts of armed criminal action (ACA). *See* § 569.020; § 569.030; and § 571.015 RSMo (2000).[1] Cook was sentenced to a concurrent 25-year term of imprisonment on each of the four counts. Because the motion court's decision to deny relief after an evidentiary hearing was not clearly erroneous, we affirm.

---

[1] All rule references are to Missouri Court Rules (2019). All statutory references are to RSMo Noncum. Supp. (2014), unless otherwise indicated.

Cook bore the burden of proving the grounds asserted in his post-conviction motion by a preponderance of the evidence. Rule 24.035(i); *Gales v. State*, 533 S.W.3d 796, 799 (Mo. App. 2017). Appellate review of an order denying a motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law are "clearly erroneous." Rule 24.035(k); *Booker v. State*, 552 S.W.3d 522, 526 (Mo. banc 2018). "The motion court's findings and conclusions are clearly erroneous only if," after review of the record, this Court is "left with a definite and firm impression that a mistake was made." *Ross v. State*, 335 S.W.3d 479, 480 (Mo. banc 2011); *Booker*, 552 S.W.3d at 526. On review, the motion court's findings are "presumptively correct." *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991); *Gales*, 533 S.W.3d at 799. The motion court was free to believe or disbelieve any evidence, whether contradicted or undisputed, including Cook's testimony. *See Vanzandt v. State*, 212 S.W.3d 228, 231 (Mo. App. 2007). "This Court defers to the motion court on matters of credibility." *Id*.; *see Stacker v. State*, 357 S.W.3d 300, 303 (Mo. App. 2012). The following summary of facts has been prepared in accordance with these principles.

Cook was originally charged by a four-count information with two counts of first-degree robbery and two counts of ACA. The information alleged that these offenses occurred in October 2014 when Cook forcibly stole: (1) "a motor vehicle from B.C. while armed with a deadly weapon"; and (2) "currency from P.H. while armed with a deadly weapon[.]" Each count of the information also alleged that Cook was a prior and persistent offender.

Thereafter, a plea agreement was reached. In exchange for a guilty plea on all four counts, the State agreed that each count would have a 25-year-sentence cap and that all of

the sentences would run concurrently. The State also agreed to amend Count 1 from first-degree robbery to second-degree robbery.

In March 2017, a plea hearing was held, at which Cook entered his guilty plea to robbery in the first and second degrees, and two counts of ACA. The plea court accepted Cook's plea. In June 2017, the plea court imposed sentences consistent with the plea agreement.

In November 2017, Cook timely filed a *pro se* Rule 24.035 motion for post-conviction relief. Appointed counsel filed an amended motion.[2] The amended motion alleged, *inter alia*, that plea counsel were ineffective: (1) for failing "to act as intermediary between [Cook] and the prosecutor in plea negotiations, which resulted in [Cook] ultimately receiving and accepting a less-favorable offer than he would have received, accepted and been sentenced to by the court had his attorneys adequately assisted [Cook] in negotiations"; and (2) for representing Cook under "an actual conflict of interest that adversely affected the adequacy of counsel's representation[.]"

In January 2019, the motion court conducted an evidentiary hearing, at which Cook and his plea counsel testified. Thereafter, the motion court issued findings of fact and conclusions of law denying post-conviction relief. With respect to the first claim, the motion court found that Cook "did not show his attorneys failed to negotiate a better plea offer." With respect to the second claim, the motion court found that Cook "failed to show a conflict of interest adversely affected his case." This appeal followed. Additional facts will be included below as we address Cook's two points on appeal.

---

[2] This Court has independently verified the timeliness of Cook's post-conviction motions. *See* **Moore v. State**, 458 S.W.3d 822, 825-26 (Mo. banc 2015); **Dorris v. State**, 360 S.W.3d 260, 268 (Mo. banc 2012).

*Point 1*

Cook's first point contends his plea counsel provided ineffective assistance during plea negotiations. "It is well settled that the right to the effective assistance of counsel applies to certain steps before trial" including "the entry of a guilty plea." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). In *Frye*, the United States Supreme Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 145. To show prejudice from counsel's deficient performance, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer [and that] the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]" *Id*. at 147. The following facts are relevant to this point.

Cook's plea counsel represented Cook over a two-and-a-half-year period and consisted of three attorneys: Wendy Garrison (Garrison); James Egan (Egan); and Amy Davis (Davis). All three attorneys testified. The following is a summary of their testimony.

Garrison, who entered her appearance in October 2014, a week after the original complaint was filed, gave the following testimony:

1. The prosecutor made an offer of 25 years on each of the four counts to run concurrently.

2. Garrison communicated that offer to Cook.

3. Cook wanted to sit on the case for a while to see if the offer would get any better.

Thereafter, Garrison was transferred to a different county.

Egan began representing Cook in May 2015. Egan gave the following testimony:

1. Egan proposed to the prosecutor that the 25-year offer be a "cap."

4

2. The prosecutor agreed to the 25-year cap on each count.

3. Egan communicated that offer to Cook. With the cap in place, Egan also told Cook he would argue for lesser time at sentencing.

4. Cook rejected the offer and felt what he needed was substance abuse treatment, proposing a treatment center in Hawaii.

5. Egan set up a face-to-face meeting with the prosecutor about the proposed treatment, but the prosecutor refused to accept the treatment proposal.

6. Egan then proposed a 20-year per count counteroffer to the prosecutor, but the prosecutor refused that counteroffer.

7. Although Cook wanted Egan to propose 15-year sentences, Egan did not think it appropriate to make "frivolous negotiations" of even less time when the prosecutor had already refused the 20-year offer.

In January 2016, the prosecutor announced that because Cook rejected all previous plea offers, these offers were revoked. In April 2016, Egan became aware of a conflict and filed a motion to withdraw from Cook's case. The court granted that motion in May 2016.

Davis entered an appearance in Cook's case in July 2016. Davis gave the following testimony:

1. Davis proposed 10 and 15 years' imprisonment, but the prosecutor rejected these offers.

2. Davis eventually persuaded the prosecutor to put the prior offer of the 25-year cap per count "back on the table."

3. Cook "wanted a few last-minute negotiations," including dropping a first-degree robbery charge "to robbery second." Davis relayed that counteroffer to the prosecutor, and the prosecutor accepted it.

4. Davis communicated to Cook the offer of the 25-year cap and "robbery second" on one of the robbery charges.

5. Cook accepted this offer. According to Davis, the offer Cook accepted was the best offer the State ever made in this case.

5

Cook testified at length on his own behalf. He admitted that with respect to the first offer, it was his idea not to accept it, "lay it over for a while" and wait for a better offer with the passage of time.

In denying Cook's claim, the motion court concluded that Cook "did not show his attorneys failed to negotiate a better plea offer." The court recognized that Cook "hoped for a better offer [but] the lack of a better offer was not due to a failure of his attorneys. … The State was simply not willing to accept any of [Cook's] counteroffers." The court went on to find that counsel provided effective assistance, particularly with respect to Egan and Davis:

> Egan obtained a significant benefit by negotiating a cap rather than a straight term of years. The cap allowed defense counsel to argue for any reasonable sentence less that twenty-five years. Egan also benefitted [Cook] by arranging a face-to-face meeting with [the prosecutor] where [Cook] advocated for long-term treatment in Hawaii, which [the prosecutor] rejected. Egan conveyed an offer of twenty years per count to the State, which was not accepted. Then, Davis was effective in getting the State to put the cap of twenty-five years back on the table after withdrawing it. Davis proposed ten years on each count which was refused by the State. Ultimately Davis got the State to reduce one robbery count to a class B felony rather than a class A felony. All of these actions demonstrate effective assistance of counsel.

Cook's point contends the motion court clearly erred in denying this claim because he received ineffective assistance during plea negotiations. Cook relies on the standard of conduct set forth in *Frye*, requiring defense counsel to communicate formal offers *from* the prosecution *to* a defendant, but recognizes "this case presents the reverse situation[.]" Specifically, Cook argues his three attorneys "collectively failed … to convey [Cook's] counteroffers to the prosecutor earlier in the case." According to Cook, he "was prejudiced because the prosecutor's position hardened over time, and had [Cook's] attorneys conveyed his offers earlier there is a reasonable probability that the prosecutor would have

6

agreed to a lesser sentence, and the plea court would have accepted the agreement." We find no merit in this argument.

First, as a factual matter, Cook failed to prove that his attorneys did not convey his counteroffers to the prosecution as he claimed. In the argument section of his brief, Cook appears to concede his attorneys did in fact convey his counteroffers, but not "earlier in the case" when "the prosecutor was more likely to negotiate[.]" Cook himself admitted, however, that with respect to timing, it was *his* idea not to accept the first offer and wait for a better offer. This testimony is consistent with Garrison's testimony that Cook wanted to sit on the case for a while to see if the offer would get any better. The motion court obviously credited all three attorneys' testimony that they not only conveyed Cook's counteroffers, but made reasonable efforts to negotiate the best offer possible. The court was free to believe plea counsel's testimony, and this Court defers to the motion court's determination of credibility. *See Stacker*, 357 S.W.3d at 303; *Vanzandt*, 212 S.W.3d at 231. Thus, Cook failed to prove deficient performance of his plea counsel.

Second, Cook's argument that this case presents a "reverse" *Frye* situation has already been rejected by the eastern district of this Court in *Arnold v. State*, 509 S.W.3d 108 (Mo. App. 2016). There, Arnold claimed: (1) his "plea counsel were ineffective for refusing to make offers of 10 and 15 years' imprisonment in exchange for his guilty plea"; and (2) "had plea counsel offered a sentence of 10 or 15 years, the State would have considered accepting the offers." *Id*. at 112. The *Arnold* court first determined that as a factual matter, Arnold's claim was refuted by the record. *Id*. at 113-14. The Court went on, however, to determine that *Frye* was not applicable:

> We further note that even if Arnold's allegations were not refuted by the record, neither *Frye* nor any other authority specifies that counsel is

7

constitutionally obligated to make plea offers to the State that are suggested by the defendant. Neither party has presented, nor has our own careful research revealed, any authority to that effect.

The Supreme Court has addressed two specific and narrow instances of attorney error in the context of plea bargaining: (1) *failing to communicate* an existing offer to the defendant; and (2) *providing bad advice* about an existing offer. *See Frye,* 132 S.Ct. 1399, and *Lafler v. Cooper,* 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), respectively, Arnold suggests that the Supreme Court's holding in *Frye* extends to the facts of this case. We are not persuaded. The facts found in *Frye* are simply not present in the case at hand. Here, the *only* allegation of ineffective assistance is that plea counsel did not extend Arnold's desired offer to the State. Importantly, unlike in *Frye,* there is no allegation that plea counsel did not inform Arnold about an existing plea agreement offer.

*Id*. at 114 (emphasis in original). Given that the Supreme Court in ***Frye*** was careful to limit the scope of its holding to defense counsel's duty to communicate formal offers from the prosecution, the ***Arnold*** court went on to conclude that the "holding in *Frye* does not in any way extend to the facts of Arnold's case." ***Arnold***, 509 S.W.3d at 115.

We reach the same conclusion in this case. Cook makes no argument that any of his attorneys failed to communicate a formal offer from the prosecution. As such, ***Frye*** has no application here. *See **Arnold***, 509 S.W.3d at 114-15. Accordingly, the motion court did not clearly err in denying this particular claim. Point 1 is denied.

### Point 2

Cook's second point contends he was denied effective assistance of counsel because his plea counsel, Egan, had "an actual conflict of interest" when he also represented Cook's first victim, B.C. The following facts are relevant to this point.

The charges against Cook arose from allegations that Cook, armed with a knife, robbed B.C. in a Walmart parking lot by stealing her car, then driving the stolen car to a motel and robbing the night clerk, P.H.

8

Garrison represented Cook from October 2014 to May 2015, when she was transferred to a different county. When Egan took over for Garrison in May 2015, he had 180 clients "dumped on" him all at once. Cook was one of the new clients. Soon thereafter, Egan was assigned another new client, B.C. She was charged with distribution and possession of a controlled substance. Egan first entered his appearance on her behalf in December 2015. A warrant for B.C.'s arrest was issued the following January 2016. Egan recalled Cook telling him during the early months of 2016 that Cook had heard B.C. had a warrant, and Cook wanted to try to get the charges involving B.C. dropped or severed. Egan explained to Cook, however, that while he might be able to get the charges concerning B.C. dismissed, Cook still had a "solid case" against him for first-degree robbery and ACA with P.H.

Egan did not "make the connection" that he was representing both Cook and B.C. until April 2016. At that time, he immediately filed motions to withdraw from representing either Cook or B.C.

Egan testified that he could not think of any adverse effect from his concurrent representation. Even if at some point he would have approached the prosecutor and used B.C.'s charges to negotiate a better deal for Cook, Egan was "not sure how much it ultimately would have helped." Egan explained that the "evidence against Mr. Cook with regards to [P.H.] was pretty overwhelming." Cook also had "serious" prior convictions – "two prior robberies from his past."

The court granted Egan's request to withdraw from Cook's case in May 2016. Cook's new counsel, Davis, entered her appearance in July 2016. It was information about

9

B.C. that enabled Davis to negotiate a better plea offer. Davis was able to persuade the prosecutor to reduce the robbery charge related to B.C. to second-degree robbery.

In denying Cook's conflict-of-interest claim, the motion court found that Cook "failed to show a conflict of interest adversely affected his case." The court first recognized that "Egan represented conflicting interests for a short period of time." The court concluded, however, that: (1) Cook "did not introduce any evidence to show that his case was adversely affected by Egan's brief dual representation of himself and [B.C.]"; (2) Cook's case was "not adversely affected by Egan's conflict of interest"; (3) "Davis, not Egan, represented [Cook] during his guilty plea and sentencing, so there was no conflict of interest" at that time; and (4) Davis "used information gained from [B.C.] to negotiate a reduction in the robbery charge related to [her.]"

Cook's second point contends the motion court clearly erred in denying this claim because, Egan had "an actual conflict of interest" while representing both Cook and B.C. According to Cook, the concurrent representation "adversely affected" Egan's representation of Cook because Egan "failed to use [B.C.'s] legal troubles and unavailability to [Cook's] advantage in negotiations with the prosecutor." We disagree.

"[W]hen the movant seeks post-conviction relief following a plea of guilty, … the movant must plead facts from which the motion court could find that counsel acted under an actual – not merely potential – conflict of interest that adversely affected the adequacy of counsel's representation." *DePriest v. State*, 510 S.W.3d 331, 341 (Mo. banc 2017). "An attorney who represents both the defendant and a prosecution witness in the case against the defendant is representing conflicting interests." *Ciarelli v. State*, 441 S.W.2d 695, 697 (Mo. 1969); *State v. McEntire*, 551 S.W.3d 481, 485 (Mo. App. 2018); *see also*

*State ex rel. Horn v. Ray*, 325 S.W.3d 500, 510 (Mo. App. 2010) (similar holding applied to an attorney representing the defendant and victim in the case).

Here, Egan had an actual conflict of interest because he represented defendant Cook and victim B.C. at the same time. *See Horn*, 325 S.W.3d at 510. What Cook failed to prove, however, was that the conflict of interest "adversely affected" Egan's performance. *See DePriest*, 510 S.W.3d at 341. Egan was unaware of the conflict, represented both parties for only a short period of time, and immediately withdrew as counsel in both cases once he "made the connection" that he was representing Cook and B.C. Before Egan made that connection, he had told Cook that he still had a "solid case" against him for first-degree robbery and ACA concerning P.H., even if Egan might be able to get charges concerning B.C. dismissed. Egan testified that he was "not sure how much it ultimately would have helped" if he had negotiated a better deal for Cook in his case with B.C. Charged as a prior and persistent offender with two robberies in his past, Cook was still facing "overwhelming" evidence against him in his case with P.H. Egan's concerns about the strength of the State's case were well founded. New counsel Davis was only able to use B.C.'s information to reduce the charge to second-degree robbery in B.C.'s case, rather than a dismissal of the two charges relating to that incident. As the motion court found, while Cook "hoped" for a better offer, "the lack of a better offer was not due to a failure of his attorneys." Moreover, it was Davis – not Egan – who was representing Cook when he ultimately accepted the plea offer, at which point there was no conflict of interest. The offer Cook accepted was the best offer the State made in his case. Given these facts, the motion court did not clearly err in concluding that Cook's case was not adversely affected by Egan's conflict of interest. Point 2 is denied.

11

The motion court's findings of fact and conclusions of law are not clearly erroneous. *Booker*, 552 S.W.3d at 526; Rule 24.035(k). The order denying Cook's amended Rule 24.035 motion is affirmed.


JEFFREY W. BATES, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

DON E. BURRELL, J. – CONCUR